

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| NATHAN FELDER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | 2:07-CV-093 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner NATHAN FELDER has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 69th Judicial District Court of Dallam County, Texas for the offense of capital murder and sentence of life imprisonment. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that petitioner's federal application for habeas corpus relief should be DENIED.

I.
PROCEDURAL HISTORY

In May 2001, Petitioner was indicted for the murder of his girlfriend's two-year-old son. In March 2003, a jury found petitioner guilty of capital murder. Petitioner was sentenced to life in prison. On direct appeal to the Seventh Court of Appeals for the State of Texas, petitioner urged double jeopardy violations and errors in the jury charge occurred at trial. The appellate court

affirmed the conviction, and the Court of Criminal Appeals refused petitioner's petition for discretionary review.

Petitioner filed his state application for habeas corpus relief in September 2006, which the Court of Criminal Appeals denied without written order in May 2007. Petitioner then filed this federal habeas application.


## II.
## PETITIONER'S ALLEGATIONS

In his federal application, petitioner appears to contend the State of Texas is holding him in violation of the Constitution and laws of the United States for the following reasons:

1.      The prosecutor used peremptory challenges to discriminate against African-American jurors, in violation of *Batson v. Kentucky*.

2.      Petitioner received ineffective assistance of counsel because appellate counsel failed to raise the *Batson* issue on appeal.

3.      The court of appeals erred when it denied petitioner the right to dismiss his court-appointed appellate counsel and proceed pro se on appeal.


## III.
## STANDARD OF REVIEW

This case was filed subsequent to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the standards of review set forth in the AEDPA apply to this case. *Lindh v. Murphy*, 521 U. S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997); *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Consequently, petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim:

(1)      resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Furthermore, all factual determinations made by a state court shall be presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by the petitioner. 28 U.S.C. § 2254(e). The ruling of the Texas Court of Criminal Appeals denying petitioner's state habeas application without written order constituted an adjudication of petitioner's claims on the merits. *Salazar v. Dretke*, 419 F.3d 384, 398 (5th Cir. 2005).

## IV.
## EXHAUSTION OF STATE COURT REMEDIES

As discussed in Section V below, petitioner raises arguments in his federal petition that he failed to raise in his state habeas petitions. Section 28 U.S.C. § 2254 states, as relevant to this proceeding:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)(I)  there is an absence of available State corrective process; or

(ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)   An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The exhaustion doctrine set forth in section 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases.  *Castille v. Peoples*, 489 U. S. 346, 349, 109 S. Ct. 1056, 1059, 103 L. Ed. 2d 380 (1989).  The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Rose v. Lundy*, 455 U. S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982).

> Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution.  Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Id.*  (brackets, internal quotation marks, and citations omitted).  To have exhausted his state remedies, a habeas petitioner must have *fairly presented* the *substance* of his federal constitutional claims to the state courts.  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied*, 523 U. S. 1139, 118 S. Ct. 1845, 140 L. Ed. 2d 1094 (1998).  This requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims.  *Picard v. Connor*, 404 U. S. 270, 276, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971).  Further, in order to satisfy the federal exhaustion requirement, petitioner must fairly present to the **highest** state court **each** constitutional claim he wishes to assert in his federal habeas petition.  *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom. Skelton v. Smith*, 506 U. S. 833, 113 S. Ct. 102, 121 L. Ed. 2d 61 (1992); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982), *cert. denied*, 460 U. S. 1056, 103 S. Ct. 1508, 75 L. Ed. 2d 937 (1983).  In the State of Texas, the

Court of Criminal Appeals in Austin, Texas is the highest court which has jurisdiction to review a petitioner's confinement. TEX. CODE CRIM. PROC. ANN. art. 44.45 (Vernon 1999). Claims may be presented to that court through an application for a writ of habeas corpus, *see* TEX. CODE CRIM. PROC. ANN. art. 11.01 et seq. (Vernon 1999), or on direct appeal by a petition for discretionary review.

The undersigned will address the merits of the unexhausted claims petitioner presents in his federal petition. The merits of federal claims that are either new, unexhausted claims, or claims which are procedurally barred will not necessarily be addressed.

## V.
## PETITIONER'S CLAIMS

A court will not grant federal habeas corpus relief unless an error was so gross or a trial so fundamentally unfair that the petitioner's constitutional rights were violated. In determining whether an error was so extreme or a trial so fundamentally unfair that a retrial is necessary, this Court must review the putative error at issue, looking at the totality of the circumstances surrounding the error for a violation of the petitioner's constitutional rights.

### A.
### *Batson* Violation

In his first ground of error, petitioner contends the State violated *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), because the prosecutor used peremptory challenges to remove African-Americans from the jury pool. *See id.* at 96-97, 106 S. Ct. at 1723. Petitioner did not raise this argument on direct appeal; the first time he raised this claim was in his state habeas corpus application. The Texas Court of Criminal Appeals has held a habeas corpus action is not a substitute for a direct appeal where the facts providing the basis for the alleged error were available

at the time of direct appeal. *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978). The Texas Court of Criminal Appeals has held a claim that could have been raised on direct appeal is procedurally defaulted if it is raised for the first time in a petition for habeas corpus relief. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. on reh'g).

The United States Court of Appeals for the Fifth Circuit has decided a case where a petitioner brought a *Batson* claim in a federal habeas petition but failed to bring the claim on direct appeal at the state-court level. *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007). In *Dorsey*, the court established that Texas case law "sets forth an adequate state ground capable of barring federal habeas review" and held that a United States district court was barred from reviewing the merits of such a claim and, instead, could only apply the procedural bar established by Texas law. *Id.*

Petitioner failed to raise the *Batson* issue on direct appeal. The record, which contains all of the facts necessary to bring the *Batson* issue, was available on direct appeal. Therefore, petitioner was procedurally barred from raising the issue for the first time in his state habeas petition. This Court cannot now consider the merits of such a claim, but must apply the procedural bar. *See id.* Petitioner's first ground is procedurally defaulted.

## B.
### Ineffective Assistance of Counsel

In his second ground, petitioner contends he received ineffective assistance of appellate counsel. Petitioner complains his appellate counsel was ineffective in failing to raise the *Batson* issue on direct appeal. Additionally, in his "Amended Ground of error 2.A.," petitioner contends he received ineffective assistance of counsel at trial. Petitioner never presented an ineffective assistance of *trial* counsel argument to any of the state courts, and this issue is unexhausted and

barred from now being reviewed in federal court.[1]  *See Nobles*, 127 F.3d at 420.  Petitioner's

ineffective assistance of *appellate* counsel claim, however, was raised at the state-court level, is

exhausted, and is properly before this Court.

      *1.     Proving Ineffective Assistance of Counsel*

      In order to obtain habeas corpus relief on grounds of ineffective assistance of counsel, a

petitioner must demonstrate not only that his counsel's performance was deficient, but also that the

deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.

Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  To demonstrate deficiency, the petitioner must show

counsel's actions "fell below an objective standard of reasonableness."  *Id*. at 668, 104 S. Ct. at 2064.

However, a strong presumption exists that counselors are generally not deficient in their

performance.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U. S.

at 690, 104 S. Ct. at 2066).  To prove prejudice, a petitioner "must show a reasonable probability

that, but for counsel's unreasonable failure . . . he would have prevailed on his appeal."  *Smith v.

Robbins*, 528 U. S. 259, 285, 120 S. Ct. 746, 764,145 L. Ed. 2d 756 (2000).

      Although a right to effective assistance of appellate counsel exists, that right does not include

a right to have every nonfrivolous issue raised on appeal.  *Jones v. Barnes*, 463 U.S. 745, 752, 754,

103 S. Ct. 3308, 3313, 3314, 77 L. Ed. 2d 987 (1983); *Givens v. Cockrell*, 265 F.3d 306, 310 (5th

Cir. 2001) (citing *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)).  Instead, appellate

counsel's decision to raise certain issues and not others is evaluated in the same manner as trial

counsel's decisions at trial, *i.e.*, was "counsel performing in a reasonably effective manner."  *Green*,

---

[1]  Furthermore, the grounds petitioner urges to support his ineffective assistance of trial counsel claim do not have any basis in the record.  Contrary to petitioner's claim, his trial counsel did object to the striking of the African-American venirepersons and presented arguments at the *Batson* hearing.  Therefore, even were this Court to consider petitioner's ineffective assistance of counsel claim, the claim would fail.

160 F.3d at 1043.

   2.   *Proving a Batson Violation*

   *Batson v. Kentucky* mandates a trial court must conduct a three-step inquiry upon a defendant's challenge to peremptory strikes. "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Batson*, 476 U.S. at 96-97, 106 S. Ct. at 1723). "Second, if the showing is made, the burden shifts to the prosecution to present a race-neutral explanation for striking the juror in question." *Id.* This explanation need not be "persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices." *Id.* "Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* Although the persuasiveness of prosecution's justification is evaluated in the third step, the "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

   3.   *Batson Claim in Petitioner's Case*

   The trial record of the case at bar does not contain a list of the jury pool and racial classification of its members. A necessary inference from the record, however, is that three African-Americans were in the jury pool. One of the three told the judge, during a bench conference, that he was very familiar with the defendant and very close to the defendant's family. (RR vol. 7, pg. 204). Accordingly, the trial judge *sua sponte* dismissed this venireman. The two remaining African-American venirewomen were stricken by the State. Because no African-Americans remained in the potential jury panel, defense counsel made a *Batson* motion calling on the State to offer an explanation as to why it had stricken the two venirepersons. (RR vol. 7, pg. 221-22). The State

explained it removed the women because both had friendly relationships with the defendant's mother. (RR vol. 7, pg. 222). Petitioner initially contends the State's explanations were disingenuous because they were not supported by the women's statements during voir dire.

A review of the record indicates both of the African-American venirewomen indicated they knew petitioner's family. One of the venirewomen—Ms. Sledge—said "I know the Blackwells" during voir dire (Blackwell is the last name of petitioner's mother). (RR vol. 7, pg. 150). Later in voir dire, the following occurred:

| | |
|---|---|
| [PROSECUTOR]: | Ms. Sledge, how did you - - you know Nathan's mom? |
| JUROR: | Uh-huh. |
| . . . | |
| [PROSECUTOR]: | How is it that you know her? |
| JUROR: | From church, they visited us to go to church. They come over to our church. I don't know. My husband, he know [sic] them, and my husband know of them, but I don't. I'm just - - |
| [PROSECUTOR]: | And you're - - |
| JUROR: | And at the school, because I work in school, he comes through the lunch line, but that's all. That's about it. |

(RR vol. 7, pg. 152-53).

The State struck Ms. Sledge from the jury panel. When later required to explain why it removed Ms. Sledge, the State prosecutor said, "we struck [Ms. Sledge] because of her relationship and acquaintance with the mother of the defendant . . . and her answers to the questions that they went and visited in each other's churches, and that her husband . . . also knew the family of the defendant." (RR vol. 7, pg. 222).

The second venirewoman, Ms. Taylor, stated as follows:

| | |
|---|---|
| [PROSECUTOR]: | Ms. Taylor, how is it that you know [defendant's mother]? |
| JUROR: | I just got to know her through my grandkids, some of the other kids. |
| [PROSECUTOR]: | Okay.  You know her through her grandchildren? |
| JUROR: | Yes.  They went to school with my kids. |
| [PROSECUTOR]: | Do you visit [petitioner's mother] in her home, she visit in your home ever? |
| JUROR: | I have visited her in the home. |
| [PROSECUTOR]: | Okay.  All right.  She visited in your home? |
| JUROR: | No. |

(RR vol. 7, pg. 153-54).[2]  The State struck Ms. Taylor from the jury panel.  When required

to explain why, the State prosecutor said,

> we struck [Ms. Taylor] for her answers to the question because of her relationship
> and acquaintance with the defendant's mother . . . her statements that she knew the
> defendant's mother and his brothers, that her mother's grandchildren went to school
> with relatives of the defendant, and also that there were visits in the home that [Ms.
> Taylor] had visited in the home of [defendant's mother], and because of those - - that
> - - those relationships, the State made the strike on [Ms. Taylor].

(RR vol. 7, pg. 222).

The record indicates petitioner's trial counsel timely objected to the exclusion of the two

women.  The trial court then conducted the mandated *Batson* analysis.  When challenged, the

prosecution gave race-neutral reasons for excluding the two women.  Petitioner contends the reasons

given by the prosecution were not supported by the record.  The record reflects, however, both

---

[2]  Only the striking of the two venirewomen is contested.  The trial court *sua sponte* struck an African-
American venireman without any objection.  Petitioner does not contest such action on appeal.  Insofar as petitioner
would attempt to contest the trial court's *sua sponte* action, it would be framed as an ineffective assistance of trial
counsel argument, which, as discussed above, was not exhausted at the state-court level.

women indicated they knew petitioner's mother.[3]  The State's race-neutral explanation as to Ms. Sledge did, in fact, have support in the record.  Similarly, the prosecutor's statements regarding Ms. Taylor were based on Ms. Taylor's statements in voir dire.  Petitioner's defense counsel did not reply to the State's proffered reasons for exclusion.  The trial court, apparently deciding petitioner had not carried his burden of demonstrating discriminatory intent, denied petitioner's *Batson* motion. *See Rice*, 546 U.S. at 338; *Batson*, 476 U.S. at 96-97, 106 S. Ct. at 1723.

Petitioner appears to contend the two African-American women who were stricken had answered the questions fairly and had never stated that they could not fairly adjudicate the case, and therefore should not have been removed.  The standard advanced by petitioner, however, is not required by *Batson. Batson* only requires the prosecution to offer race-neutral explanations for the venireperson's exclusion, and although the government's explanation of its peremptory challenges must be "clear and reasonably specific," it need not rise to the level justifying a challenge for cause. *Batson*, 476 U.S. at 97-98, 106 S. Ct. at 1723.

Petitioner makes an additional argument that other, non-African American, venirepersons stated they knew him and were not stricken by the State.  Petitioner bases this argument on a purported juror list attached to a "Motion to Amend" his state application for habeas corpus relief.  On the list are the names of two individuals who stated during voir dire they knew the defendant and who were empaneled on the jury.  There is nothing in the record indicating the race of these individuals, but petitioner contends both were not African American.

---

[3]  Ms. Sledge may have contradicted herself in that at one point she affirmatively answered that she knew petitioner's mother but then later stated differently.  She did, however, affirmatively answer at one point she knew petitioner's mother.  Ms. Sledge additionally stated petitioner's mother had visited her church and her husband knew petitioner's family.

In a proper case, the fact that non-minority venirepersons with the same or similar characteristics of minority venirepersons who were struck may be considered in determining if the proffered race-neutral reason was valid. *See U.S. v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) ("in circumstances where the Government's reason is . . . inconsistent with its treatment of similar non-minority jurors, we may have a basis for reversal"); *U.S. v. Moeller*, 80 F.3d 1053, 1060 (5th Cir. 1996) (no *Batson* violation when the State exercised reasons for exclusion on both minority and non-minority panel members). Petitioner's contention, however, is essentially an ineffective assistance of trial counsel argument, which, as discussed above, is unexhausted and unreviewable by this Court. If there was any error, petitioner's trial counsel had the burden to object to the State's explanation as being pretext. Trial counsel did not make any such objection and no error was preserved for appeal. If error was not perfected, appellate counsel could not have raised the issue on appeal even if the issue were well founded.

In addition, as respondent points out, the other two jurors who knew petitioner and who were empaneled did not appear to be as close to him and his family. One of the jurors stated petitioner and her husband had worked together "many years ago." (R.R. vol. 3, pg. 153). The other stated she knew petitioner's mother because she worked for a doctor and petitioner's mother was one of the doctor's patients. (*Id.*). There was a notable difference in the degree of familiarity the defendant had with the excluded panelists and the remaining ones. There was a legitimate reason for the prosecutor's failure to treat the excluded panelists the same as the non-excluded panelists. In light of these facts, the State habeas court did not make an unreasonable determination in denying habeas relief. *See* 28 U.S.C. § 2254(d).

Lastly, while petitioner contended, in his original state habeas corpus application, that non-African American people who knew him were empaneled, he did not provide the juror list substantiating his claim until April 25, 2007. The trial court issued its findings and fact and conclusions of law on March 1, 2007. Under Texas law in a habeas corpus case, "once all of the appropriate materials have been timely submitted to the trial court and the trial court has made its written findings of fact and conclusions of law, the clerk of the convicting court shall immediately transmit these materials to [the Court of Criminal Appeals]." *Ex parte Simpson*, 136 S.W.3d 660, 667 (Tex. Crim. App. 2004) (citing TEX. CODE CRIM. PROC. ANN art 11.071, § 11). The Court of Criminal Appeals is to then dispose of the case. *Id.* There is no statutory provision permitting an applicant to file original evidence directly with the Court of Criminal Appeals. *Id.* at 668. Based upon the Texas Code of Criminal Procedure, the Court of Criminal Appeals has established that any evidence must be submitted to the trial court before it issues its findings of fact and conclusions of law, and that, absent compelling and extraordinary circumstances, "[e]videntiary affidavits, letters, transcripts, or other documents relating to a habeas claim should not be attached to motions or briefs, and they shall not, and will not, be considered by this Court." *Id.* at 668-69. Therefore, because petitioner did not timely file his juror list, he forfeited at the state level the consideration of it as evidence, and it is unexhausted. *See id.*; 28 U.S.C. § 2254(b)(1).

Because there was no nonfrivolous error for appellate counsel to raise on appeal, appellate counsel's performance was not deficient. *See Strickland*, 466 U.S. at 687. Assuming, arguendo, that appellate counsel's performance was deficient, petitioner fails to show a reasonable probability he would have prevailed on appeal had appellate counsel raised the *Batson* issue. *See Smith*, 528 U.S. at 285. Petitioner did not receive ineffective assistance of appellate counsel, and his second

contention is without merit.

## C.
## Appellate Court Error

In his third ground, petitioner contends the court of appeals erred when it denied petitioner's motion to dismiss his court-appointed appellate counsel and proceed pro se on appeal. A review of the habeas corpus petition presented to the state courts reveals this is the first time petitioner has presented such an argument. Because he failed to exhaust this claim, this Court will not now determine the merits of petitioner's argument. *See Skelton*, 950 F.2d at 1041.

Assuming this Court could evaluate the merits of petitioner's third ground, the claim would fail. The Supreme Court has explicitly held that a defendant does not have a federal constitutional right to represent himself on appeal. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 164-65, 120 S. Ct. 684, 692, 145 L. Ed. 2d 597 (2000). Further, as discussed above, petitioner avers his appellate counsel was ineffective for failing to raise the *Batson* issue. This Court has already determined, however, such an issue has no merit. Because petitioner cannot show he would have prevailed on appeal had he raised the *Batson* issue pro se, he cannot demonstrate any prejudice. *See Smith*, 528 U.S. at 285, 120 S. Ct. at 764. Petitioner's third ground is without merit.

## VI.
## RECOMMENDATION

Petitioner has failed to demonstrate the state court proceedings "resulted in a decision that was contrary to . . . clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas

Corpus by a Person in State Custody filed by petitioner NATHAN FELDER be DENIED.

VII.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 25th day of February 2009.

_Clinton E. Averitte_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).